STATE OF NORTH CAROLINA v. ADOLPHUS LANE

No. 43

(Filed 4 November 1980)

**Constitutional Law § 76; Criminal Law § 48.1– in-custody silence about alibi – cross-examination at trial – prejudicial error**

In a prosecution of defendant for possession and sale of heroin where defendant was arrested and taken to a police station, indictments were read to him, and defendant interrupted the reading to state that he had not sold heroin to the person named in the indictments, defendant's failure to disclose his alibi defense to the police officers then or to some other person prior to trial did not amount to an inconsistent statement in light of his in-court testimony relative to an alibi, and the district attorney's cross-examination of defendant concerning failure to disclose his alibi was sufficiently prejudicial to warrant a new trial, since the cross-examination attacked defendant's exercise of his right against self-incrimination in such a manner as to leave a strong inference with the jury that defendant's alibi defense was an after-the-fact creation, and the cross-examination concerning defendant's failure to relate his defense of alibi prior to trial probably substantially contributed to his conviction.

Justice BROCK did not participate in the consideration or decision of this case.

APPEAL by the State pursuant to G.S. 7A-30(2) from decision of the Court of Appeals, 46 N.C. App. 501, 265 S.E. 2d 493, granting a new trial upon defendant's appeal from *Hairston, J.,* at the 16 July 1979 Session of FORSYTH Superior Court.

Defendant was charged in bills of indictment issued on 23 April 1979 with (1) possession with intent to sell heroin and (2) the sale of heroin.

At trial the State offered evidence tending to show that Lee Walker, a Greensboro police officer, acting as an undercover agent went to a lounge in Winston-Salem at about 11:00 p.m. on the night of 4 April 1979 where he purchased $50.00 worth of heroin from defendant. Defendant was arrested on 25 April 1979 and transported to the Winston-Salem Police Station where Detective Gary A. Lloyd began reading the indictments to defendant. Defendant interrupted the reading of the indictments and stated, "Hell, I sold heroin before, but I didn't sell heroin to this person." At that point, defendant was not being interrogated and had not been given his *Miranda* warnings. He made no other statements to the officers at that time.

Defendant testified that on 3 April 1979 at about 5:00 in the afternoon he accompanied his employer to Charlotte in order to attend an automobile auction. They returned to High Point at about 11:30 p.m. and shortly thereafter left for Darlington, South Carolina. They left Darlington on 5 April 1979 and arrived in High Point at about 11:00 a.m. on that day. His employer gave testimony which corroborated defendant's alibi.

On cross-examination the Assistant District Attorney was permitted over defendant's objections to ask defendant whether he had previously told the police officers, any of the district attorneys or anyone else about the alibi to which he testified at trial.

The jury returned verdicts of guilty on both charges. Defendant appealed from a judgment imposing consecutive prison sentences of nine to ten years in each case. The Court of Appeals ordered a new trial in a decision written by Judge Hill and concurred in by Judge Robert M. Martin. Judge Webb dissented. The cause is now before us as a matter of right pursuant to G.S. 7A-30(2).

*Rufus L. Edmisten, Attorney General, by William F. O'Connell, Special Deputy Attorney General, Robert R. Reilly, Assistant Attorney General, and Reginald L. Watkins, Associate Attorney, for the State.*

*Alexander, Hinshaw & Schiro, by Charles J. Alexander, II, for defendant appellant.*

BRANCH, Chief Justice.

The single question presented by this appeal is whether defendant was prejudicially deprived of his constitutional rights when the court permitted the district attorney to cross-examine him concerning his failure to disclose his alibi at the time he made a statement to the police officers or at any time before the trial.

Defendant relies heavily upon the case of *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976). In *Doyle* the two defendants were arrested and charged with selling marijuana. They were duly given their *Miranda* warnings. At trial the defendants for the first time related that they were "framed" by narcotics agents and over objections were cross-

examined as to their post-arrest silence concerning the "frame." The defendants were convicted and appealed, assigning as error, *inter alia*, the prosecutor's cross-examination concerning their post-arrest silence. The United States Supreme Court held that the use for impeachment purposes of defendants' silence at the time of arrest and after they had received the *Miranda* warnings violated their rights under the Due Process Clause. The Court held that it was fundamentally unfair to impeach defendants concerning their post-arrest silence after they had been impliedly assured through the *Miranda* warnings that their silence would not result in any penalty.

We note that the warnings mandated by *Miranda* are directed to whether statements made by an accused while in custody and while being subjected to custodial interrogation by police officers are voluntarily made so as to be admissible into evidence. *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602, 10 A.L.R. 3d 974 (1966); *State v. Sykes*, 285 N.C. 202, 203 S.E. 2d 849 (1974); *State v. Fletcher*, 279 N.C. 85, 181 S.E. 2d 405 (1971). Here the only statement made by defendant was volunteered, and its admissibility is not before us. In the context of this case, we attach little significance to the fact that *Miranda* warnings were not given. With or without such warnings defendant's exercise of his right to remain silent was guaranteed by Article 1, Section 23, of the North Carolina Constitution and the fifth as incorporated by the fourteenth amendment to the United States Constitution. The due process reasoning upon which decision in *Doyle* mainly rests does not arise in this case since defendant had not been given the *Miranda* warnings at the time the indictments were being read to him. Thus, any comment upon the exercise of this right, nothing else appearing, was impermissible. *State v. Castor*, 285 N.C. 286, 204 S.E. 2d 848 (1974).

We are cognizant of the recent case of *Jenkins v. Anderson*, _____U.S._____, 65 L.Ed. 2d 86, 100 S.Ct. 2124 (1980), where the defendant in a first-degree murder case testified at trial that he acted in self-defense. On cross-examination the prosecutor questioned the defendant about the fact that he never told anyone about that defense over a period of about thirty days prior to his arrest. The defendant was convicted and upon his appeal before the Supreme Court of the United States that Court held that the defendant's fifth amendment rights were

not violated by the use of his *prearrest* silence to impeach his credibility. *Jenkins v. Anderson, supra,* is distinguishable from the case *sub judice* in that here defendant was under arrest at the crucial time and thus within the ambit of fifth amendment protections. Even so, there remains the question of whether the challenged cross-examination was permissible for the purpose of impeachment by showing a prior inconsistent statement.

In *Harris v. New York,* 401 U.S. 222, 28 L.Ed. 2d 1, 91 S.Ct. 643 (1971), the United States Supreme Court held that the trial judge did not commit error by allowing the prosecutor to introduce into evidence prior inconsistent statements which were made by the accused without benefit of the *Miranda* warnings for the purpose of impeaching the defendant's credibility. The Court, in so holding, reasoned that the *Miranda* safeguards could not be perverted into a license to use perjury as a defense without being confronted with his prior inconsistent utterances.

Thus, in the case before us, we are squarely faced with the question of whether defendant's failure to disclose his alibi defense to the police officers or to some other person amounts to an inconsistent statement in light of his in-court testimony relative to an alibi. In support of its position that defendant's failure to relate his alibi testimony to someone prior to trial amounted to a prior inconsistent statement, the State points to a quote in *Wigmore on Evidence,* Section 1040 (Chadbourn Rev. 1970) from *Foster v. Worthing,* 146 Mass. 607, 16 N.E. 572 (1888) which states:

> It is not necessary, in order to make the letter competent, that there should be a contradiction in plain terms. It is enough if the letter, taken as a whole, either by what it says or *by what it omits to say,* affords some presumption that the fact was different from his testimony; and in determining this question, much must be left to the discretion of the presiding judge. [Emphasis added.]

The State also relies upon *State v. Mack,* 282 N.C. 334, 193 S.E. 2d 71 (1975). There the witness testified that she had heard deceased threaten the defendant but failed to state that she had told a police officer that she had also heard defendant threaten deceased. The trial judge allowed the police officer to testify to this omission as a prior inconsistent statement. In

holding this to be proper, this Court speaking through Justice Huskins stated:

> Prior statements of a witness which are inconsistent with his present testimony are not admissible as substantive evidence because of their hearsay nature. *Hubbard v. R.R.*, 203 N.C. 675, 166 S.E. 802 (1932); *State v. Neville*, 51 N.C. 423 (1859). Even so, such prior inconsistent statements are admissible for the purpose of impeachment. ...
>
> " ... [I]f the former statement fails to mention a material circumstance presently testified to, *which it would have been natural to mention in the prior statement,* the prior statement is sufficiently inconsistent," .... [Citations omitted.] [Emphasis added.]

*Id.* at 339-40, 193 S.E. 2d at 75.

The crux of this case is whether it would have been natural for defendant to have mentioned his alibi defense at the time he voluntarily stated that he "did not sell heroin to this person [Lee Walker]." We answer the question in the negative. In our opinion, the alibi defense was not inconsistent with defendant's statement that he did not sell heroin to Officer Lee Walker. At the time the indictment was being read to defendant on 25 April 1979, he was under arrest and was in custody in the Winston-Salem Police Department. At that point, with or without the *Miranda* warnings, his constitutional rights guaranteed by the fifth amendment were viable. The indictment charged that on 4 April 1979, some twenty-one days prior to the date of the reading of the indictment, defendant sold heroin to police officer Walker. It was natural for defendant to know whether he had sold drugs to a named person and spontaneously to deny having done so. In our opinion it would not be natural for a person, particularly under the circumstances present in this case, to know where he was on a given date some twenty-one days prior thereto. It is a matter of common knowledge that the average person cannot, *eo instanti*, remember where he was on a given date one, two or three weeks in the past without some investigation and substantiation from sources other than his ability of instant recall.

Under the particular circumstances of this case, it is our opinion that the failure of defendant to state his alibi defense at

the time the indictment was being read to him or at any time prior to trial did not amount to a prior inconsistent statement.

Finally, we must decide whether the challenged cross-examination of defendant was sufficiently prejudicial to warrant a new trial. We considered this question in *State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677 (1972), and there stated the pertinent rule as follows:

> Every violation of a constitutional right is not prejudicial. Some constitutional errors are deemed harmless in the setting of a particular case, not requiring the automatic reversal of a conviction, where the appellate court can declare a belief that it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824, 24 A.L.R. 3d 1065 (1967); *Harrington v. California*, 395 U.S. 250, 23 L.Ed. 2d 284, 89 S.Ct. 1726 (1969). Unless there is a reasonable possibility that the evidence complained of might have contributed to the conviction, its admission is harmless. *Fahy v. Connecticut*, 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229 (1963).

The test is not whether there was sufficient evidence to support the verdict. The correct test is whether in the setting of a particular case the court can declare a belief that the error was harmless beyond a reasonable doubt, that is, that there is no reasonable possibility that the violation might have contributed to the conviction. *Fahy v. Connecticut, supra; State v. Castor, supra; State v. Taylor, supra.*

Here it is clear that there was a violation of defendant's constitutional rights. The cross-examination attacked defendant's exercise of his right against self-incrimination in such a manner as to leave a strong inference with the jury that defendant's defense of alibi was an after-the-fact creation. The defense of alibi was crucial to defendant's case, and it seems probable that the cross-examination concerning his failure to relate his defense of alibi prior to trial substantially contributed to his conviction. Since we cannot declare beyond a reasonable doubt that there was no reasonable possibility that this evidence might have contributed to defendant's conviction, we hold that it was sufficiently prejudicial to warrant a new trial.

The decision of the Court of Appeals is

Affirmed.

Justice Brock did not participate in the consideration or decision of this case.